United States District Court
Southern District of Texas
**ENTERED**
August 06, 2020
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **BRIAN DAVID MOYNIHAN,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **V.** § | **CIVIL ACTION NO. 4:19-CV-1396** |
| § | |
| **ANDREW SAUL, COMMISSIONER** § | |
| **OF THE SOCIAL SECURITY** § | |
| **ADMINISTRATION** § | |
| § | |
| **Defendant.** § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 8) and Defendant's Motion for Summary Judgment (Dkt. No. 9). The District Judge referred the entire case to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 20.) After considering the parties' briefs, the administrative transcript, and the relevant legal authority, the Magistrate Judge recommends that the District Judge **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendant's Motion for Summary Judgment.

**I. Administrative Proceedings**

Plaintiff filed this action for judicial review of the Social Security Administration's ("SSA") final decision on Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. On May 13, 2015, Plaintiff filed an application for benefits claiming an inability to work since March 27, 2014, due to hemorrhagic stroke; central post stroke pain syndrome; left-side weakness, high blood pressure, burning and tingling in the face, neck, arm, hand, leg, and

foot; left-shoulder pain; balance problems; and panic attacks.[1] Plaintiff worked as an automobile salesperson from March 2002 to December 2008 and as a mobile home salesperson from January 2009 to March 2014.[2]

In December 2015, the SSA found Plaintiff not disabled at the initial level of review.[3] In April 2016, the SSA again found Plaintiff not disabled upon reconsideration.[4] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 24, 2018.[5] On May 23, 2018, the ALJ issued a decision finding Plaintiff not disabled.[6] On February 22, 2019, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, transforming the ALJ's decision into the final decision of the Commissioner.[7] On April 17, 2019, Plaintiff timely sought judicial review of the decision by this court.[8]

## II. Five-Step Analysis and Standard of Review

An applicant for social security benefits qualifies as "under a disability" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(a)(1)(E), (d)(1). To make this determination, the SSA utilizes a sequential five-step analysis. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. § 404.1520(a)(4). The analysis stops at any step that produces a finding that the applicant is or is not disabled. *See* 20 C.F.R. § 404.1520(a)(4).

---

[1] *See* Dkt. No. 6-3 at 16; Dkt. No. 6-4 at 3-4; Dkt. No. 6-6 at 2-3.
[2] *See* Dkt. No. 6-7 at 10.
[3] *See* Dkt. No. 6-4 at 2-11; Dkt. No. 6-5 at 2-6.
[4] *See* Dkt. No. 6-4. at 12-25; Dkt. No. 6-5 at 8-11.
[5] *See* Dkt. No. 6-3 at 32; Dkt. No. 6-5 at 13-14.
[6] *See* Dkt. No. 6-3 at 16-26.
[7] *See id.* at 2-6.
[8] *See* Dkt. No. 1.

"At step one, the ALJ considers the applicant's work activity, if any." *Schofield*, 950 F.3d at 317 (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1520(a)(4)(i)). "A person performing substantial gainful activity is not disabled" regardless of his medical condition, age, education, or work experience. *Id.* (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1520(b)); *see also* 20 C.F.R. § 404.1520(b).

"At step two, the ALJ considers the medical severity of the applicant's impairment(s)." *Schofield*, at 317-18 (internal quotation and alteration marks omitted) (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). A person who does not have a severe impairment is not disabled. *Id.* (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1520(c)). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (emphasis omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)).

"At step three, the ALJ considers whether the [applicant's] impairment meets or equals an impairment listed in Appendix 1 of the regulations [("Listings")]." *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). An applicant whose condition meets or equals all of the criteria of the identified Listing will be found disabled without consideration of his age, education, or work experience. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Before reaching step four, the ALJ must determine the applicant's RFC, which is defined as "the most [an applicant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC is based on an assessment of all of the relevant evidence in the case record. *Id.* At step four, the ALJ considers the RFC assessment and the applicant's past relevant work ("PRW") to determine whether the applicant is capable of performing the work he performed in the past. 20

C.F.R. § 404.1520(a)(4)(iv); *see also Schofield*, 950 F.3d at 318. If capable of performing past work, he is not disabled. *See Schofield*, 950 F.3d at 318. (citing 20 C.F.R. § 404.1520(f)).

"At step five, the ALJ considers the applicant's residual functional capacity [("RFC")] and age, education, and work experience to see if the applicant can make an adjustment to other work." *Id.* (internal quotation and alteration marks omitted) (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the applicant could adjust to other work, he is not disabled. *See id.* (citing 20 C.F.R. § 404.1520(g)).

Pursuant to 42 U.S.C. 405(g), the Court has the authority to review the Commissioner's final decision denying disability benefits. The review is limited to: (1) "whether substantial evidence supports the decision[;]" and (2) "whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla.

*Biestek v. Berryhill*, _ U.S. _, 139 S. Ct. 1148, 1154 (2019) (internal quotations marks, alterations, and citations omitted). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive," and this Court must affirm the final decision. 42 U.S.C. § 405(g). However, "if no credible evidentiary choices or medical findings support the decision[,]" the Court should overturn it. *Schofield*, 950 F.3d at 321.

### III. ALJ Hearing

Plaintiff and a medical expert testified at the hearing, and Plaintiff was represented by an attorney.[9] Plaintiff's attorney provided an overview of Plaintiff's medical history, stating that Plaintiff had suffered "a severe stroke in 2012, but then went back to work" after "a little bit of

---

[9] *See* Dkt. No. 6-3 at 32-70.

rehab[ilitation.]"[10] In March 2014, Plaintiff began to experience a sensation of electrical shocks on the left side of his body, weakness, and paresthesia.[11] Plaintiff described the physical requirements of his work as a salesperson, the symptoms and limiting effects of his condition, and the medical treatment he underwent.[12] After questioning Plaintiff about his prior work, the ALJ confirmed with the vocational expert that the testimony provided sufficient information about Plaintiff's PRW.[13]

The medical expert explained that Plaintiff developed central pain syndrome as a result of a thalamic stroke.[14] In the opinion of the medical expert, Plaintiff's condition equaled the presumptively disabling Listing 11.04 (Vascular Insult to the Brain) of the regulations.[15] At the hearing, the ALJ did not present an RFC to the vocational expert for evaluation of Plaintiff's ability to perform his PRW or other work.[16]

On March 23, 2018, the vocational expert who attended the hearing completed a Vocational Interrogatory sent by the ALJ.[17] The ALJ posed the following hypothetical inquiry:

> Assume a hypothetical individual who was born on March 28, 1962[,] is able to communicate in English and has a high school education and has work experience as described in your response to question #6. Assume further that this individual has the [RFC] to perform: can occasionally lift 20-50 pounds, stand or walk for 6 hours out of an 8 hour day and sit for 6 out of an 8 hour day; this individual requires a sit/stand option; this individual can occasionally push and pull with the left upper extremity; can occasionally climb ladders, ropes and scaffolds, can frequently reach, overhead reach, handle objects, finger and feel all with the left upper extremity; can never be exposed to unprotected heights; only occasionally be exposed to extreme heat and cold; this individual cannot perform commercial

---

[10] *Id.* at 35-36; *see also id.* at 48, 55.
[11] *See id.* at 36, 49-50.
[12] *See id.* at 38-39, 41, 46-64.
[13] *See id.* at 45.
[14] *See id.* at 65-66.
[15] *See id.* at 66-68.
[16] *See id.* at 69.
[17] *See* Dkt. No. 6-7 at 84-90.

driving; and can only occasionally kneel.[18]

The vocational expert responded that Plaintiff was capable of performing his PRW as a salesperson, stating: "The RFC is medium[;] his past work is light. He can sit or stand as needed in past work."[19]

### IV. Analysis

On review of the ALJ's decision and Plaintiff's specific challenges to the decision, the Court finds that the Commissioner's final decision is supported by substantial evidence and followed correct legal standards as explained below.

#### A. ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 27, 2014, the alleged onset date.[20] This finding is correct.

At step two, the ALJ recognized chronic left-side pain and status post stroke to be severe impairments.[21] However, she found hypertension, visual limitations, and anxiety not to be severe. Regarding hypertension, the ALJ cited treatment with medications, the absence of associated visual, cardiovascular or renal abnormalities, and the lack of evidence that the diagnosis caused more than a minimal effect on his ability to work.[22] The ALJ found a treating physician's notation of visual limitations did not indicate a severe impairment as Plaintiff did not report any visual difficulties in the disability application process and the record reflected no diagnosis or treatment.[23] In order to evaluate the severity of Plaintiff's anxiety, the ALJ considered the four broad areas of

---

[18] *Id.* at 86.
[19] *See id.*
[20] *See* Dkt. No. 6-3 at 18.
[21] *See id.* at 18-20.
[22] *See id.* at 18-19.
[23] *See id.* at 20.

mental functioning and found Plaintiff had no limitations in three of the areas and mild limitation in the fourth, indicating that the impairment was nonsevere.[24] These findings are consistent with the medical record as a whole and are supported by substantial evidence.

At step three, the ALJ found that Plaintiff did not meet or equal the requirements of any Listing, specifically addressing Listing 11.04.[25] The ALJ stated that the record lacked evidence of Listing-level sensory or motor aphasia, Listing-level disorganization of motor function in two extremities, and marked limitation in both physical functioning and at least one area of mental functioning.[26]

The ALJ acknowledged the opinion of the medical expert but gave it no weight because the ALJ found that it was inconsistent with the objective evidence in the record and it relied on Plaintiff's subjective complaints.[27] The ALJ cited the following record inconsistencies: (1) negative diagnostic studies; (2) the absence of a diagnosis of paresthesia; (3) treating sources' notes that only reflected Plaintiff's subjective complaints; (4) essentially normal physical examinations "with the exception of sensory deficits on the left, which have been noted to be in no particular dermatomal distribution[;]" and (5) lack of evidence that Plaintiff experienced extreme limitations in standing, walking, or using his upper extremities.[28] The ALJ's determinations as to both Listing 11.04 and the weight given the medical expert's opinion are supported by substantial evidence.

The ALJ turned to the assessment of Plaintiff's RFC.[29] The ALJ considered Plaintiff's subjective testimony and symptom reports, finding that, although his "medically determinable

---

[24] *See id.* at 19.
[25] *See id.* at 20-21.
[26] *See id.* at 20.
[27] *See id.* at 20-21.
[28] *Id.*
[29] *See id.* at 21-25.

impairments could reasonably be expected to cause some of the alleged symptoms[,]" his "statements concerning the intensity, persistence and limiting effects" of his symptoms were not consistent with the record evidence.[30] The ALJ specifically noted that the record did not "document any objective clinical or diagnostic findings that would preclude the performance of a restricted range of medium work[.]" The ALJ also considered Plaintiff's medical history of a hemorrhagic cerebral vascular insult in July 2012 and the findings at his hospitalization in March 2014 for complaints of left-side tingling.[31] Review of subsequent examinations with stable findings, Plaintiff's activities of daily living, Plaintiff's lack of treatment since April 2016, and the absence of evidence that he experienced any exacerbation of symptoms since April 2014 factored into the ALJ's RFC assessment.[32] Finally, the ALJ discussed medical opinion testimony, finding that the Medical Source Statement Questionnaire completed by a treating source was entitled to substantial weight and that the opinions of the medical consultants who administratively reviewed Plaintiff's file were entitled to little weight.[33]

After considering of all the above, the ALJ found that Plaintiff had the RFC:

[T]o perform medium work . . . except he is able to occasionally lift 20 to 50 pounds; stand and/or walk for six hours out of an eight-hour day; and sit for six hours out of an eight-hour day. [Plaintiff] requires a sit/stand option. He can occasionally push and pull with the left upper extremity; occasionally climb ladders, ropes and scaffolds; and frequently reach, reach overhead, handle objects, finger and feel with the left upper extremity. [Plaintiff] can never be exposed to unprotected heights; have occasional exposure to extreme heat and cold; and cannot

---

[30] *Id.* at 22; *see also id.* at 21-24.
[31] *See id.* at 22.
[32] *See id.* at 22-24.
[33] *See id.* at 24-25.

perform commercial driving. He can occasionally kneel.[34]

The ALJ's RFC assessment is supported by substantial evidence.

At step four, the ALJ concluded, based on the vocational expert's interrogatory response, that Plaintiff was capable of performing his PRW as automobile and mobile home salesperson.[35] The ALJ noted that, according to the vocational expert, Plaintiff's RFC was at a medium exertional level and his past work was at a light exertional level with a sit/stand option. Relying on the vocational expert's opinion, the ALJ found that Plaintiff had not been under a disability from the alleged onset date through the date of the ALJ's decision.[36] The ALJ's conclusion is supported by substantial evidence.

### B. Plaintiff's Arguments

Plaintiff articulated eight arguments that can be grouped as challenges to the ALJ's RFC finding and to the findings at steps three and four. The Court addresses them in decisional order.

1. *Step 3*

Plaintiff asserts that the ALJ erred in failing to adopt the opinion of the medical expert that Plaintiff's condition equaled Listing 11.04.

The ALJ must evaluate every medical opinion in the record and decide what weight to give each. *See* 20 C.F.R. § 404.1527(c). The determination whether an applicant met or equaled a Listing is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). No "special significance" is due "to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3).

Here, in compliance with the regulations, the ALJ evaluated the medical expert's opinion,

---

[34] *Id.* at 21.
[35] *See id.* at 25.
[36] *See id.* at 26.

decided to give it no weight, and articulated valid reasons for finding it inconsistent with the record as a whole. The ALJ independently evaluated whether Plaintiff met or equaled Listing 11.04 and supported her determination with cites to record evidence. The determination whether Plaintiff met or equaled a Listing was her decision to make. The ALJ committed no legal error in not adopting the medical expert's opinion.

### 2. *RFC*

Plaintiff asserts that the ALJ committed several legal errors in assessing Plaintiff's RFC: (1) providing insufficient discussion, rationale, and citation to evidence for the RFC assessment as a whole and specifically concerning the sit/stand option; (2) failing to incorporate consideration of Plaintiff's medically determinable impairments; (3) failing to conduct a meaningful evaluation of Plaintiff's credibility; and (4) relying on the vocational expert's answer to the hypothetical inquiry that was based on a flawed RFC.

The RFC assessment is based on all of the relevant medical and nonmedical evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). The ALJ's decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at 1. The RFC is "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (quoting SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). However, the ALJ need not "articulate a separate and explicit finding that a claimant can maintain a job on a sustained basis." *Castillo v. Barnhart*, 151 F. App'x 334, 335-36 (5th Cir. 2005). An applicant's RFC includes all medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). The RFC determination is also an issue reserved to the

Commissioner. 20 C.F.R. § 404.1527(d)(2).

Social Security Ruling ("SSR") 16-3p explains that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3p, 2016 WL 1119029, at *2. Even so, an ALJ cannot ignore statements of symptoms and must utilize the following two-step process: (1) consideration of "whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms, such as pain;" and (2) evaluation of "the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an [applicant's] ability to perform work-related activities. "*Id.*

The vocational expert's testimony may serve as substantial evidence if it is based on a hypothetical question that incorporates all of the limitations "supported by the evidence and recognized by the ALJ." *See Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002)(holding that the ALJ properly relied on the vocational expert's opinion because the ALJ "scrupulously incorporated" all of the limitations "supported by the evidence and recognized by the ALJ").

The ALJ's RFC narrative discussion extended for more than four pages and offered a detailed discussion of Plaintiff's symptoms, treatment, daily activities and abilities, and medical opinion testimony. Subsumed in the ALJ's discussion, by the definition of RFC, was a finding that Plaintiff could perform work activities on a sustained basis. The ALJ found Plaintiff capable of standing and/or walking for six hours in a workday and sitting for six hours in a workday and required a sit/stand option for any employment. The ALJ was not required to provide more detail than that.

The ALJ assessed Plaintiff's physical and mental limitations from all medically determinable impairments, finding that neither hypertension nor visual limitations caused any

interference in Plaintiff's ability to perform work activities and that anxiety posed no more than a mild limitation in the area of interacting with others. As for Plaintiff's severe impairments of left-side pain and status post stroke, the ALJ discussed at length both the medical documentation of his resulting limitations and his own assessment of his limitations.

Regarding the ALJ's conclusion that Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were inconsistent with the record evidence, the ALJ outlined the required process for considering what weight to afford such statements. The ALJ also meticulously followed those steps in reaching her conclusion. The ALJ's RFC assessment complied with legal requirements and provided more than enough rationale and citation to evidence. Because the ALJ's RFC determination included all of the limitations supported by the evidence, the ALJ properly relied on the vocational expert's response to the hypothetical inquiry that the hypothetical individual could perform Plaintiff's PRW.

   3. *Step 4*

Plaintiff asserts that the ALJ provided no specific findings or analysis on the physical and mental demands of Plaintiff's PRW and that the ALJ failed to fully question Plaintiff and develop the record regarding the demand of his PRW.

The ALJ's responsibility at step four is to determine whether the applicant's impairments would prevent him from doing PRW. *See* 20 C.F.R. § 404.1520(e), (f). The ALJ makes this determination by comparing the claimant's RFC with the physical and mental demands of his PRW. *See* 20 C.F.R. § 404.1520(f). The ALJ may also rely on information from a vocational expert. *See id.* The claimant bears the burden of demonstrating that he is unable to perform his PRW. *See Brown v. Astrue*, 344 F. App'x 16, 19 (5th Cir. 2009).

At the hearing, the ALJ questioned Plaintiff about his PRW and, before moving on to other

12 / 13

topics, asked the vocational expert whether Plaintiff's testimony was sufficient to inform the vocational expert's step-four analysis. The vocational expert indicated that he had enough information. In her decision, the ALJ acknowledged that Plaintiff's PRW was performed at a lesser level of exertion than his RFC and that the PRW included a sit/stand option. The ALJ made no error in relying on the vocational expert's analysis regarding Plaintiff's ability to perform his PRW.

## V. Conclusion

For the foregoing reasons, the Magistrate Judge hereby recommends that the District Judge **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendant's Motion for Summary Judgment.

## Notice of Right to Object

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on August 6, 2020.

Sam S. Sheldon
United States Magistrate Judge